

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 6, 2020

**By ECF and Email**

Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Domingo Ventura*, 13 Cr. 181 (JPO)

Dear Judge Oetken:

      The Government respectfully submits this letter in opposition to Domingo Ventura's *pro se* application for compassionate release pursuant to Title 18, United States Code, Section 3582(c)(1)(A)(i). Ventura's motion fails because he has not demonstrated that he has exhausted all administrative avenues as required by the statute or that 30 days have lapsed since submitting a request for compassionate release to the Bureau of Prisons ("BOP"). This Court, therefore, lacks the authority to grant Ventura's motion at this time. Even if he had exhausted such avenues, however, Ventura's motion fails on the merits because he has not demonstrated extraordinary and compelling reasons justifying his release. In addition, given the seriousness of Ventura's crimes, the factors set forth in 18 U.S.C. § 3553(a) counsel against his early release.

      For the reasons set forth below, the Court should deny Ventura's motion.

**I.**    **Background**

      On March 24, 2013, a grand jury in the Southern District of New York returned a one-count indictment charging Ventura with intent to distribute one kilogram and more of heroin, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. The conduct that formed the basis of Ventura's charge involved his participation in an international heroin trafficking conspiracy, and more specifically, his direct role in handling and preparing the money that would be used to finance mass quantities of heroin. On October 30, 2013, Ventura pled guilty in the Southern District of New York to the above-referenced charge in the indictment.

      On February 14, 2014 the Honorable Katherine B. Forrest sentenced Ventura principally to 151 months' imprisonment. In considering the appropriate sentence to impose, Judge Forrest noted that Ventura was "not a typical first offender because of the quantity of heroin that [he] was involved with. The quantity of heroin was over or in the vicinity of 100 kilos. That is a tremendous amount of heroin." (*See* Feb. 14, 2014 Sentencing Tr. at 18:13-16, ECF No. 46 ("Sentencing Tr.").) Indeed, Judge Forrest noted that the defendant was in charge of handling

1

"millions of dollars" during the course of the conspiracy, and that "the amount of heroin that [he] was] involved with has also destroyed families.  It has also undoubtedly taken mothers from their children. . . . It also undoubtedly meant that there are people who overdosed on that heroin.  There is no way in the world with a hundred kilos of heroin that there weren't very serious and social consequences that were experienced by the people who took the heroin."  (*Id.* at 19:16-21:4.)

Ventura has been serving his sentence at FCI Oakdale II ("FCI Oakdale").  Ventura's earliest projected release date is November 3, 2023.

On July 28, 2020, Ventura filed the instant motion for compassionate release, arguing that this Court has the authority to reduce Ventura's sentence to time-served under the First Step Act because he has exhausted his administrative remedies.  (*See* ECF No. 107 at 4).[1]  Ventura also argues that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ have "diminished" his immune system, thereby creating "extraordinary and compelling reasons" justifying his release.  (*See id.* at 2.)  In further support of this argument, Ventura points to the "administrative mishandl[ing] of the COVID-19 situation" at FCI Oakdale, which had previously seen a higher number of positive COVID-19 cases as compared to other federal facilities.  (*See id*.)  As set forth below, these arguments are unpersuasive.

## II.     <u>Argument</u>

### A.  Ventura Has Not Exhausted His Administrative Remedies

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling reasons." *Id.* § 3582(c)(1)(A)(i).  A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

As this Court has recently held, Section 3582(c)(1)(A)'s exhaustion requirement is mandatory.  *See United States v. Ricardo Ruiz Rosado*, No. 15 Cr. 799 (JPO), ECF No. 85 (S.D.N.Y. July 24, 2020) (finding that "the Court lacks statutory authority to grant Defendant's motion at the present time due to the statute's explicit exhaustion requirement"); *United States v. Lopez-Imitalo*, No. 03 Cr. 294 (JPO), Dkt. 175 (S.D.N.Y. June 12, 2020) (citing *United States v. Roberts*, No. 18 Cr. 528 (JMF), 2020 WL 1700032, at *2-*3 (S.D.N.Y. Apr. 8, 2020) and *United States v. Ogarro*, No. 18 Cr. 373 (RJS), 2020 WL 1876300, at *2-*5 (S.D.N.Y. Apr. 14, 2020)); *see also United States v. Raia*, 954 F.3d 594 (3d Cir. 2020); *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020).  Indeed, it is critical, in this context, to note that Section 3582(c)'s exhaustion

---

[1] Ventura's motion indicates that it was filed on July 9, 2020 in the Eastern District of New York.  However, it was not filed on the docket of the above-captioned case until July 28, 2020.

requirement is statutory, and thus is not the sort of judicially-crafted exhaustion requirement that "remain[s] amenable to judge-made exceptions." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). By significant contrast, *statutory* exhaustion requirements "stand[] on a different footing." *Id.* There, "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to." *Id.* Thus, where a statute contains mandatory exhaustion language, the only permissible exceptions are those contained in the statute. *Id.*; *see also Bastek v. Fed. Crop. Ins.*, 145 F.3d 90, 94 (2d Cir. 1998) ("Faced with unambiguous statutory language requiring exhaustion of administrative remedies, we are not free to rewrite the statutory text.").

As described above, Section 3582(c)(1)(A) contains mandatory exhaustion language with no statutory exceptions. The plain language of the statute makes clear that a court "may not" modify a sentence unless, as relevant here, the defendant has first "fully exhausted all administrative rights" or waited 30 days after transmitting his request to the warden. Unlike the Prison Litigation Reform Act ("PLRA"), for example, there is no statutory qualifier that a defendant need only exhaust all "available" remedies.[2] *See also* 28 U.S.C. § 2254(b)(1)(A) (habeas statute requires exhaustion of all remedies "available in the courts of the State"). Thus, Section 3582(c)(1)(A) is a mandatory exhaustion provision with no applicable exceptions. *Cf. Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 750 (2017) (statute requiring that certain types of claims "shall be exhausted" is a mandatory exhaustion provision for those types of claims). As Circuit Judge Sullivan, sitting by designation, recently explained, Section 3582(c)'s exhaustion requirement is "clear as day" and is therefore mandatory. *United States v. Ogarro*, No. 18 Cr. 373 (RJS), 2020 WL 1876300, at *3 (S.D.N.Y. Apr. 14, 2020).

In recent months, numerous defendants around the country have cited the unusual circumstances presented by COVID-19 as a basis for compassionate release, and have argued that the exhaustion requirement should be excused. To be sure, COVID-19 presents unusual circumstances, in which compassionate release decisions should be made expeditiously. But the text of Section 3582 contains no exigency exception for such circumstances, and indeed the text affirmatively refutes the availability of such an exception. While many statutory exhaustion provisions require exhaustion of all administrative remedies before a claim is brought in court, Section 3582 provides an alternative: exhaustion of all administrative rights *or* the lapse of 30 days from the warden's receipt of the inmate's request for compassionate release, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). This 30-day alternative rule is a "limited futility-like exception," and, therefore, "[g]iven Congress's decision to mandate exhaustion and specify a single alternative, the Court is not free to infer a 'general unwritten special circumstances exception.'" *United States v. Roberts*, No. 18 Cr. 528 (JMF), 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020) (quoting *Ross*, 136 S. Ct. at 1856, 1862); *see also United States v. Arena*, No. 18 Cr. 14 (VM) (Dkt. 354 at 2) (S.D.N.Y. Apr. 6, 2020) (stating that there is "simply no authority that permits [the defendant] to

---

[2] In particular, the PLRA demands that an inmate exhaust "such administrative remedies *as are available*," meaning that the only permissible exception to exhaustion is where the remedies are "unavailable." *Ross,* 136 S. Ct. at 1856-58 (emphasis added); *see also id.* at 1855 (criticizing the "freewheeling approach" adopted by some courts of appeals to exhaustion requirements, and overruling precedent from the Second Circuit and other circuits that had read additional exceptions into the rule). Here, no such exception exists in the statute.

3

circumvent the administrative exhaustion requirement" based on a claim of futility, because the ability to seek relief after 30 days constitutes "an express futility provision"). Ultimately, defendants' arguments regarding the need for a futility exception "boil[] down to a pragmatic insistence that a 30-day waiting period is simply too long to wait in the current health crisis. But there is nothing in the First Step Act or its history to suggest that courts may modulate the exhaustion waiting period when they see fit." *Ogarro*, 2020 WL 1876300, at *5.

Here, Ventura argues that he has exhausted his administrative remedies by attaching as Exhibit A to his motion a document purporting to be a June 1, 2020 request for compassionate release addressed to the Warden of FCI Oakdale. (*See* ECF No. 107 at 7, Ex. A.) On the document itself, it appears that Ventura included type-written text in the "Disposition" section stating that, as of July 6, 2020, the warden had not provided a response to the defendant's request. (*See id.*) The BOP has informed the Government that FCI Oakdale has no record of having received this document, or any other request for a reduction in sentence, from Ventura. Without any additional evidence regarding the date upon which FCI Oakdale received this document, or any other request for a reduction in sentence, Ventura cannot show that the mandatory 30-day waiting period set forth in Section 3582(c) has lapsed. Indeed, the statutory language clearly contemplates that a request actually have been submitted and received by the BOP in order to trigger the 30-day clock. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring that a court wait until the defendant has fully exhausted administrative remedies, or "the lapse of 30 days *from the receipt of such a request by the warden of the defendant's facility*, whichever is earlier," to adjudicate a compassionate release request) (emphasis added). Aside from the type-written notations on Exhibit A, nothing in Ventura's motion provides the Court with information confirming when this request was submitted to FCI Oakdale.[3]

Because Ventura has not "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," and because Ventura cannot show that 30 days have lapsed since "the receipt of such a request by the warden of the defendant's facility," the Government respectfully submits that the Court lacks authority to decide Ventura's motion at this time. *See* 18 U.S.C. § 3582(c)(1)(A).

### B. Ventura's Motion Fails To Demonstrate Extraordinary and Compelling Reasons for a Sentence Reduction

Even if Ventura had met the requirements for filing at this time, and he has not, Ventura has failed to demonstrate that a sentence reduction is warranted in this case. Ventura argues that his release is justified by his medical condition, in combination with the COVID-19 pandemic and the conditions at FCI Oakdale. Even if a defendant satisfies Section 3582(c)'s statutory exhaustion requirement, he must still establish that "extraordinary and compelling reasons warrant . . . a reduction [of his sentence] . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The relevant

---

[3] For the avoidance of doubt, the Government is not suggesting that this document is fraudulent. Instead, it is the Government's position that, without more—and in light of BOP having informed the Government that FCI Oakdale has no record that any such request was submitted or received—Ventura cannot show that the Court has authority to decide his motion at this time.

4

Sentencing Commission policy statement is found in U.S.S.G. § 1B1.13. Guidelines Section 1B1.13 provides that a reduction of sentence is permitted, as relevant here, if: (1) "extraordinary and compelling reasons warrant the reduction; (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.1

With respect to the "extraordinary and compelling reasons" requirement, the application notes to Guidelines Section 1B1.13 provide three instances where such reasons exist: (A) the defendant has a serious medical condition, such as a terminal illness; (B) the defendant is, among other things, at least 65 years old and experiencing a serious deterioration in health; or (C) the defendant's family circumstances have changed such that the defendant is the only available caregiver for a minor child or incapacitated spouse. U.S.S.G. § 1B1.13 app. note 1(A)–(C). The application notes also allow a catchall condition where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at app. note 1(D); *see* BOP Program Statement 5050.50.[4]

As the proponent of the motion, Ventura bears the burden of proving that "extraordinary and compelling reasons" exist. *See, e.g., United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010) (same); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

Here, Ventura cannot meet that burden. He is 53 years old, and does not appear to suffer from any of the serious health conditions that the CDC has identified as placing individuals at particular risk for severe COVID-19 complications. Ventura's most recent BOP medical records indicate that he suffers from ███████████████████████████████████████████████, which are treated by daily medication at FCI Oakdale.[5] But these conditions, without more serious complications, are not among the high risk categories identified by the CDC. *See* CDC, "Groups at Higher Risk for Several Illness."[6] Nor do the medical records appear to substantiate Ventura's assertion that he suffers from a "diminished immune system" that "severely aggravat[es]" his risk of complications from COVID-19. (*See* ECF No. 107, at 2.) As such, Ventura cannot show that his medical conditions constitute "extraordinary and compelling reasons" justifying a reduction in his sentence.

COVID-19, of course, presents new and complex challenges for protecting inmates' health. And while the Government acknowledges that FCI Oakdale had previously seen a higher number of cases of COVID-19 as compared to other BOP facilities, BOP has taken, and continues to take,

---

[4] *Available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

[5] Ventura's 2020 BOP medical records have been attached hereto as Exhibit A and are provided to the Court under seal. The Government can provide the Court with additional medical records dating back to 2016 at the Court's request.

[6] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html

5

proactive measures to mitigate the spread of the virus and protect and monitor inmates' health, including at FCI Oakdale. Starting in January 2020, the BOP implemented a multi-phase COVID-19 Action Plan.[7] Over seven phases, BOP created a task force to study and coordinate its response to the virus, issued guidance to staff, limited movement, established screening, boosted inventories of cleaning supplies, and promoted social distancing to the extent possible by limiting group gatherings, among numerous other measures. As of the date of this submission, BOP is continuing to operate under a Modified Operations Plan, suspending social visits, limiting internal inmate movement, and conducting screening and quarantining as necessary.[8] The BOP continues to revise and update that Action Plan in response to the fluid nature of the COVID-19 pandemic, and in response to the latest guidance from experts at the World Health Organization (the "WHO"), the Centers for Disease Control and Prevent (the "CDC"), and the Office of Personnel Management. Id. BOP has taken the threat seriously, has mitigated it, and continues to update policies and procedures in accord with the facts and recommendations of medical experts.

The measures described above appear to be mitigating the spread of COVID-19 at BOP facilities. Indeed, as of August 5, 2020, the BOP reports that FCI Oakdale II, the facility in which Ventura is housed, has zero confirmed active cases of inmates with COVID-19 and 8 confirmed active cases of staff with COVID-19.[9] Thus, while concerns regarding COVID-19 at FCI Oakdale and other BOP facilities are serious, BOP is responding to them, and Ventura has failed to demonstrate that his particular circumstances are "'extraordinary' in terms of the statutory requirement, for in these respects [he is] no different from a host of other prisoners." *United States v. Pinto-Thomaz*, No. 18-CR-579 (JSR), 2020 WL 1845875, at *2 (S.D.N.Y. Apr. 13, 2020); *see also Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

As such, Ventura has not satisfied his burden to show that extraordinary and compelling circumstances warrant compassionate release, even if the Court holds that his motion is not otherwise barred at this time.

### C. The § 3553(a) Factors Do Not Warrant Compassionate Release

Finally, compassionate release is not justified under the factors set forth in 18 U.S.C. § 3553(a) in light of the seriousness of Ventura's offenses and the need to deter similar criminal conduct. Section 3582(c) and the U.S. Sentencing Guidelines policy statement require the Court to consider the Section 3553(a) factors where applicable in any sentencing modification. *See* 18 U.S.C. § 3582; U.S.S.G. § 1B1.13. Here, the Section 3553(a) factors counsel against a reduction in sentence.

In determining Ventura's sentence, Judge Forrest carefully considered the Section 3553(a) factors. Ventura committed a serious crime that caused substantial harm to society given the massive amounts of heroin that he conspired to distribute. (*See* Sentencing Tr. at 18:13-21:9.) The defendant was responsible for handling millions of dollars of money as part of his involvement in

---

[7] *See* https://www.bop.gov/resources/news/20200313_covid-19.jsp.
[8] *See* https://www.bop.gov/coronavirus/covid19_status.jsp (last visited on August 6, 2020).
[9] *See* https://www.bop.gov/coronavirus/ (last visited on August 6, 2020).

the drug trafficking organization, and in doing so, he was "dealing in the destruction of other people's lives." (*See id*. at 21:10-13.) With respect to general deterrence, Judge Forrest found that "those filling integral roles in such large-scale heroin trafficking have to be dealt with very seriously. There is no doubt about that. There has to be a promotion of respect for the law and also a sense that these kinds of crimes will be dealt with very seriously." (*Id*. at 23:5-10.) And with respect to the nature and circumstances of the offense, Judge Forrest considered that "here there were multiple deals, multiple transactions" that involved Ventura "gathering up the money. The money was large quantities, hundreds of thousands of dollars at a time." (*Id*. at 23:15-17.)

The defendant's plea agreement stipulated to a recommended Guidelines range of 135 to 168 months' imprisonment. While the defendant had no criminal history and met the criteria set forth in 18 U.S.C. § 3553(f) for relief from the 120-month statutory minimum, Judge Forrest stated, "I have considered higher sentences. Based upon Mr. Goldstein's comment about your family needs, given this quantity of heroin, I actually in the absence of your being a family man and being committed to your family in the way that you are, I would have had no problem going to the high end of what is considered to be a guidelines sentence, which is 168 months." (*See id*. at 24:15-21.) Judge Forrest then imposed a sentence of 151 months' imprisonment, which fell squarely within Ventura's recommended Guidelines range. Ventura still has a significant amount of time left to serve on that sentence, since he is not scheduled to be released until November 2023.

The Section 3553(a) factors considered by Judge Forrest remain just as strong and applicable today as they did at sentencing, and as such, a reduction of Ventura's sentence is not warranted.

\* \* \*

### III.     Conclusion

In sum, the Court should reject Ventura's motion for compassionate release. Ventura has failed to show that he has exhausted his administrative remedies before filing the instant motion. This Court, therefore, lacks the authority to grant the defendant's motion at this time. Further, Ventura has failed to establish extraordinary and compelling circumstances warranting a sentence reduction. Finally, given the seriousness of Ventura's crimes, the factors set forth in 18 U.S.C. § 3553(a) counsel against his early release.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

By: _____
David J. Robles
Assistant United States Attorney
(212) 637-2550